UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL KOLPINSKI,
    Plaintiff,

No. 3:15-cv-1267 (SRU)

v.

RUSHFORD CENTER, INC.,
    Defendant.

## RULING ON MOTION TO REMAND

Michael Kolpinski filed a two-count complaint against Rushford Center, Inc. ("Rushford"), in Connecticut Superior Court on July 27, 2015. Kolpinski, a former employee of Rushford, alleges that he was terminated as a result of his speech and subsequent whistleblower report relating to Rushford's alleged illegal and unethical business practices. He contends that his termination was the result of retaliation in violation of Connecticut General Statutes §§ 31-51q and 31-51m.

On August 24, 2015, Rushford filed a notice of removal, in accordance with 28 U.S.C. § 1331, arguing that Kolpinski's section 31-51q claim necessarily implicates a substantial question of federal law. After an answer was filed, Kolpinski responded by filing an amended complaint and a motion to remand on November 6, 2015.

In his amended complaint and subsequent motion to remand, Kolpinski clarified that his state law claims for relief only seek to vindicate rights protected by the Connecticut Constitution. In the motion to remand, Kolpinski asserts that the court lacks subject matter jurisdiction because no federal question remains in his complaint. For the reasons detailed below, Kolpinski's motion to remand (doc. # 21) is granted.

**I.    Standard of Review**

The party opposing a motion to remand bears the burden of showing that the requirements for removal have been met.  *California Public Employees' Retirement Sys.v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (citing *Grimo v. Blue Cross/Blue Shield of Vermont*, 34 F.3d 148, 151 (2d Cir. 1994)); 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3739 (3d ed. 1998) (collecting cases).  "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."  *Lupo v. Human Affairs Intern., Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); 1A J. Moore & B. Ringle, *Moore's Federal Practice* ¶ 0.157, at 38 (2d ed. 1989)).

**II.   Discussion**

Federal district courts have "original jurisdiction" over civil actions "arising under" federal law.  28 U.S.C. § 1331.  Unless otherwise provided by Congress, district courts also have removal jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  "[F]ederal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law."  *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 2016 WL 3093243, at *5 (2d Cir. June 2, 2016) (citing *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005)).  However, in a "'special and small category' of cases," *id.* at *5 (quoting *Gunn v. Minton*, —— U.S. ——, 133 S. Ct. 1059, 1064 (2013)), federal-question jurisdiction will also "lie over state-law claims that implicate significant federal issues."  *Id.* at *5 (citing *Hopkins v. Walker*, 244 U.S. 486, 490-91 (1917)).  "[T]he Supreme Court has been sparing in recognizing

2

state law claims fitting this criterion." *Id.* (quoting *NASDAQ OMX Group, Inc. v. UBS Securities, LLC*, 770 F.3d 1010, 1019 (2d Cir. 2014)).

A state law cause of action will only "arise under" federal law if the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.  Construing *Grable*, the Court applied the following four-factor test:

> [F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress . . . .

*Gunn*, 133 S. Ct. at 1065.  A state law claim may only be the basis for federal-question jurisdiction if "all four of these requirements are met . . . ." *Id.*

A. "Necessarily Raised"

"A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *New York ex rel. Jacobson*, 2016 WL 3093243, at *5 (quoting *Grable*, 545 U.S. at 314).  The plaintiff's "right to relief" must "necessarily depend[] on resolution of a substantial question of federal law." *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 28 (1983).  That first element will not be satisfied where "all of the plaintiff's claims seek relief under state law and none necessarily raises a federal issue." *New York ex rel. Jacobson*, 2016 WL 3093243, at *5 (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, ––– U.S. –––, 136 S. Ct. 1562, 1575 (2016) (internal alterations omitted).

In order to determine whether a state law claim necessarily turns on a construction of federal law, the court must evaluate the allegations in the complaint.  *See id.* at *7.  In *New York*

3

*ex rel. Jacobson*, the plaintiff sought to remand an action filed under the New York False Claims Act, alleging that the defendants filed fraudulent federal tax forms to claim state and city tax exemptions. *Id.* at *1.  Rather than evaluating New York's False Claims Act statute in isolation, the Second Circuit looked to the allegations in the complaint to determine whether the claims necessarily turned on a construction of federal law. *Id.* at *7.  The Court held that, "in order to establish a false statement or record within the meaning of the NYFCA, Jacobson must prove at least that the trusts did not qualify under federal law." *Id.*  Because proving a violation of federal law was a necessary component to the plaintiff's right to relief, the Court held that federal jurisdiction was proper. *Id.*

In contrast, when "the plaintiff can get all the relief he seeks just by showing [a violation of state law], without proving any violation of federal [] law," the claim does not belong in federal court. *See Manning*, 136 S. Ct. at 1568.  Though the Court in *Manning* was evaluating the preemptive effect of the Exchange Act, its holding and reasoning are applicable to the instant suit because it compared the Exchange Act's phrase, "brought to enforce," to section 1331's language, "arising under." *See id.* at 1569.  In *Manning*, the Court held that a complaint will only be found to have been "brought to enforce" the Exchange Act if it "explicitly or implicitly asserts that the defendant breached an Exchange Act duty." *Id.* at 1568.  In other words, "[a] plaintiff seeking relief under state law must undertake to prove, as the cornerstone of his suit, that the defendant infringed a requirement of the federal statute." *Id.* at 1569.  The Court analogized such a requirement to federal-question jurisdiction, which will only lie if the allegations in the complaint explicitly or implicitly assert that the defendant violated a federal right. *See id.* at 1571-72 ("a federal court could adjudicate a suit stating only a state-law claim if it included as 'an element, and an essential one,' the violation of a federal right.") (citing *Pan

4

*Am. Petroleum Corp. v. Super. Ct. of Del.*, 366 U.S. 656, 663 (1961)).  In order to determine whether a federal question is an essential element of the action, courts must focus "on 'the particular claims a suitor makes' in his complaint—meaning, whether the plaintiff seeks relief under state or federal law."  *Id.* (quoting *Pan American*, 366 U.S. at 662).

In *Manning*, the Court refused to give federal courts exclusive jurisdiction under the Exchange Act to a suit alleging short sales in violation of state securities law.  *Id.* at 1574.  The Court held so notwithstanding the fact that the action could raise issues "coinciding, overlapping, or intersecting with those under the [Exchange] Act itself."  *Id.*  The basis of its holding was that, looking at the specific allegations in the complaint, it was clear that the plaintiff sought relief under state law purely for violations of state law, which did not depend in any way on proving an underlying violation of a federal right.  Simply put, federal jurisdiction did not lie "because [plaintiff] could prevail merely by proving a breach of the contract."  *Id.* at 1571-72.

1.  *Whether Conn. Gen. Stat. § 31-51q "necessarily raises" a federal question*

In the instant case, Kolpinski alleges that Rushford terminated his employment after he spoke out against Rushford's alleged illegal and unethical business practices.  He alleges that Rushford's actions violated Conn. Gen. Stat. § 31-51q, which prohibits an employer from, inter alia, retaliating against an employee for exercising his or her rights under section 3, 4, or 14 of article first of the Connecticut Constitution.

Section 31-51q provides:

> Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution *or* section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for

>   damages caused by such discipline or discharge, including punitive damages, and
>   for reasonable attorney's fees as part of the costs of any such action for damages.
>   If the court determines that such action for damages was brought without
>   substantial justification, the court may award costs and reasonable attorney's fees
>   to the employer.

Conn. Gen. Stat. § 31-51q (emphasis added). The "or" in between "United States Constitution" and "section 3, 4, or 14" of article first of the Connecticut Constitution creates an option for those bringing a claim under section 31-51q. Plaintiffs alleging a violation of section 31-51q can base their claim on an underlying violation of the U.S. Constitution, the Connecticut Constitution, or both.

Kolpinski has chosen to seek protection solely under the Connecticut Constitution.[1] In his amended complaint, Kolpinski makes no reference to the First Amendment and only alleges that he was terminated because he exercised his rights guaranteed by section 3, 4, or 14 of article first of the Connecticut Constitution. *See* Pl.'s Am. Compl. ¶ 37. Kolpinski's memorandum in support of his motion to remand clarifies that he is expressly disclaiming any allegation that his speech was also protected by the First Amendment. *See* Pl.'s Mot. to Remand ¶ 6.

In order to prevail in his section 31-51q action, Kolpinski must prove, as an essential element of his claim, that he was terminated "on account of the exercise . . . of rights guaranteed by . . . section 3, 4, or 14 of article first of the Constitution of the state [of Connecticut] . . . ." Conn. Gen. Stat. § 31-51q. Kolpinski's right to relief does not depend on the resolution of whether he was terminated on account of his exercise of rights guaranteed by the First Amendment. Rather, Kolpinski's right to relief depends solely on his ability to prove a violation of a state law that is tied to an underlying state constitutional right.

---

[1] In the event that Kolpinski amends his complaint in state court to add a First Amendment claim, re-removal to federal court would be appropriate.

### 2. *Misplaced reliance on Bracey*

In expressly disclaiming any alleged infringement of his First Amendment rights, Kolpinski distances himself from other plaintiffs who wish to proceed under section 31-51q based on speech protected by the First Amendment.  When a plaintiff bases his or her claim on speech protected by the First Amendment, the court is required to "construe federal First Amendment law and evaluate its scope."  *Bracey v. Bd. of Educ. City of Bridgeport*, 368 F.3d 108, 116 (2d Cir. 2004).  In those circumstances, it is proper for a district court to exercise federal-question jurisdiction over a section 31-51q claim.  *See id.*

In *Bracey*, a teacher filed an action in state court against the Board of Education, City of Bridgeport, alleging that he was retaliated against for his protected speech.  *Bracey*, 368 F.3d at 110-11.  Specifically, he alleged that his employment contract was not renewed because he had voiced his concern about certain school officials to the Department of Children and Families.  *Id.*  The matter was removed to federal court on account of the fact that the plaintiff's section 31-51q claim raised a federal question.

On review of a challenge to the district court's jurisdiction, the Second Circuit looked to the allegations in the plaintiff's complaint and determined that he was alleging retaliation based on his exercise of "free speech rights [] guaranteed by the United States *and* Connecticut Constitutions."  *Bracey*, 368 F.3d at 115 (emphasis added).  Whether Bracey's allegations had merit, the Court held, "necessarily turn[ed] on some construction of federal law."  *Id.* (quoting *Franchise Tax Bd.*, 463 U.S. at 9).  Accordingly, the Second Circuit concluded that the complaint implicated a federal question on its face and federal jursidiction was proper.  *Id.* at 116.

Some decisions of this district have relied on *Bracey* in holding that all section 31-51q claims necessarily raise a federal question. *See Ting v. University of Bridgeport*, 2011 WL 2222309, at *4 (D. Conn. June 7, 2011). In *Ting*, the Court held that "the plaintiffs' section 31–51q claim in the Amended Complaint still arises under federal law because courts construe section 31–51q claims in accordance with federal First Amendment law, irrespective of whether the plaintiff claims a violation of federal or state constitutional law." *Id.* Citing *Bracey*, the Court declined to permit the plaintiff to expressly disclaim protection under the First Amendment and proceed on a pure state law theory of recovery under section 31-51q. *Id.*; *see also Vale v. City of New Haven Police Dep't.*, 3:11-cv-00632 (PCD) (D. Conn. Oct. 21, 2011) (doc. # 18) (denying plaintiff's motion to remand section 31-51q claim even though plaintiff expressly disclaimed any reliance on First Amendment protection).

Rather than looking to the allegations actually alleged by the plaintiff, the decisions in *Ting* and *Vale* analyzed the text of section 31-51q and concluded that claims brought under that statute necessarily raised a federal question. An assumption of those holdings was that section 31-51q claims require the resolution of whether the plaintiff's speech was protected under the First Amendment. Recent developments in Connecticut law have determined that such an assumption is not appropriate. *See Trusz v. UBS Realty Investors, LLC*, 123 A.3d 1212, 1221 (Conn. 2015). In *Trusz*, the Court held that the Connecticut Constitution affords a higher level of protection of an individual's right to free speech than does the First Amendment. *See Trusz*, 123 A.3d at 1214. Under the Connecticut Constitution, employee speech related to official job duties on matters of significant public interest is protected from employer discipline in a public workplace. *Trusz*, 123 A.3d at 1214. Section 31-51q extends that same protection to employee speech pursuant to official job duties in a private workplace. *Id.*

The Connecticut Supreme Court recognized that its holding in *Trusz* was contrary to the U.S. Supreme Court's view of First Amendment protections in the workplace, *see Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), and thus it was interpreting the Connecticut Constitution to protect rights not secured under the U.S. Constitution. *Trusz*, 123 A.3d at 1214; *see also Perez-Dickson v. Bridgeport Bd. of Educ.*, 2016 WL 236206, at *6 (D. Conn. Jan. 19, 2016) ("[*Trusz*] clarified that the governing standard applicable to retaliation claims pursuant to Section 31-51q differs from federal First Amendment analysis"). In so doing, the Connecticut Supreme Court highlighted that a plaintiff's right to relief under section 31-51q does not require an allegation of First Amendment injury. Because a section 31-51q claim does not require an allegation of First Amendment injury, it does not necessarily require resolution of a federal question. *See Manning*, 136 S. Ct. at 1568; *see also See Perez-Dickson*, 2016 WL 236206, at *6 (remand of section 31-51q claim was appropriate after federal claims had been dismissed at summary judgment).

B.  Amended Complaint

In the instant case, Kolpinski moves to remand because he has expressly disclaimed any claim that is based on a violation of a federal right. In his motion to remand, Kolpinski expressly states that he "seeks protection solely under the Connecticut Constitution." Pl.'s Mot. to Remand ¶ 6. Rushford argues that Kolpinski's amended complaint still raises a federal claim because Connecticut courts routinely look to federal precedent when deciding cases under section 31-51q. However, whether Connecticut courts rely on federal precedent when interpreting state law is not the proper inquiry. Rather, I must analyze the amended complaint to determine whether Kolpinski's right to relief necessarily turns on a construction of federal law. *New York ex rel. Jacobson*, 2016 WL 3093243, at *7.

To determine whether Kolpinski's section 31-51q claim necessarily raises a federal question, I must look to the allegations in the complaint. *New York ex rel. Jacobson*, 2016 WL 3093243, at *7. A plaintiff is master of his complaint and is "free to avoid federal jurisdiction by pleading only state claims even where federal claims are also available." *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998). Under the "well-pleaded complaint" doctrine, I must examine Kolpinski's statement of his own claim and decide "whether the substance of those allegations raises a federal question." *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 100 (2d Cir. 2001), *cert. denied*, 534 U.S. 1066 (2001).

"[I]f the plaintiff decides not to invoke a federal right, his claim belongs in state court." *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 27 (2d Cir. 1988) (quoting *Pan American Petroleum Corp. v. Superior Court of Delaware*, 366 U.S. 656, 663 (1961)). Ignoring a plaintiff's amended complaint would contradict the rule that the plaintiff is the "master of the claim." *Sleppin v. Thinkscan.com. LLC*, 55 F. Supp. 3d 366, 374 (E.D.N.Y. 2014) (quoting *Caterpillar, Inc. v. Williams*, 428 U.S. 386, 392 (1987)). "If the state claim can be decided without reference to [a] federal question, then there will not be grounds for removal." *Bellido-Sullivan v. Am. Intern. Group, Inc.*, 123 F. Supp. 2d 161, 165 (S.D.N.Y. 2000).

Furthermore, the fact that Connecticut courts look to federal case law for guidance to decide an issue does not mean that issue "arises under" federal law. *See Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 815 n.14 (1986) (questions relating to the scope or construction of a federal statute "arise under" federal law; however, it does not follow that a state statute, which includes a breach of a duty imposed by a federal statute, arises under federal law); *see also In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 166 F. Supp. 2d 740, 751 (E.D.N.Y. 2001) (suit raising state antitrust claim did not trigger court's "arising under" jurisdiction

notwithstanding fact that California state courts routinely relied on federal precedent when interpreting California antitrust law).

Kolpinski had the option of seeking protection under the First Amendment, the Connecticut Constitution, or both.  Kolpinski chose only to seek the protections provided by the Connecticut Constitution.  Kolpinski alleges that he was terminated on account of speech that is protected under section 3, 4, or 14 of article first of the Connecticut Constitution.  Pl.'s Am. Compl. ¶ 37.  In order to prove his claim, he must first establish that his speech was protected under the Connecticut Constitution.  Next, he must prove that he was terminated on account of that speech.  Kolpinski need not allege nor prove any violation of the First Amendment.  In other words, Kolpinski's right to relief does not necessarily turn on the construction of a federal law.  Accordingly, I do not have federal-question jurisdiction over his claim and must remand the action to state court.[2]

**III.   Conclusion**

For the foregoing reasons, Kolpinski's motion to remand (doc. # 21) is GRANTED.  This matter is remanded to the Connecticut Superior Court for the Judicial District of New Haven.  The Clerk shall effect the remand and close the file.

So Ordered

Dated at Bridgeport, Connecticut, this 18th day of July 2016.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

[2] I do not evaluate the remaining factors in *Gunn* because I have determined that a federal question was not necessarily raised by Kolpinski's Amended Complaint.  *See Gunn*, 133 S. Ct. at 1065.